**Ex Parte Diana BUI** [1]

**and**

**Ex Parte Jimmy Phai Bui**

**Nos. 01–97–00977–CR to 01-97-00980-CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 1998.

Discretionary Review Refused April 7, 1990.

---

**1.** We have restyled the causes as "Ex parte Diana Bui" and "Ex parte Jimmy Phai Bui" instead of the original "Diana Bui v. State of Texas" and "Jimmy Phai Bui v. State of Texas" because habeas corpus proceedings are separate and distinct proceedings independent of the cause instituted by the State. We also note that this is consistent with the practice of the Court of Criminal Appeals, which has styled appeals from habeas corpus proceedings in this manner. *See Goodbread v. State,* 912 S.W.2d 336 (Tex.App.—Houston [14th] 1995) *aff'd by Ex parte Goodbread,* 967 S.W.2d 859 (Tex.Crim.App.1998).

Allan A. Cease, Richard Thomas Bell, Houston, for Appellants.

John B. Holmes, Alan Curry, Houston, for Appellees.

Before Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MICHOL O'CONNOR, Justice.

In four appeals from four cases, Jimmy Phai Bui and Diana Bui, the appellants, appeal the trial court's orders denying their requests for habeas corpus relief. We consider their appeals together in this opinion. We affirm.

### Background

On or about March 13, 1997 and April 1, 1997, the United States Department of Agriculture (USDA) and the State of Texas conducted a joint operation and investigation into violations of the Food Stamp Act, specifically Title 7 U.S.C. § 2024. The operation focused on two small grocery stores, one of which was owned by the appellants. The appellants gave cash to an undercover agent and called in the electronic benefit transfer (EBT) information to another store authorized in the Food Stamp Program. The second store requested payment from the USDA.

On May 7, 1997, the USDA charged the appellants with food stamp violations and ordered them to pay a fiscal claim of $522.76 representing the actual loss to the government, and a punitive fine of $3,568.28. The fine was assessed under the federal statutes and regulations governing food stamp benefits. On June 4, 1997, the appellants paid the fiscal claim of $522.76 and the fine of $3,568.28. The appellants were not indicted in federal court.

The State charged each appellant in two separate cases with the illegal use, transfer, and redemption of food stamps under section 33.011 of the Human Resource Code. The State indicted the appellants for a violation that occurred on March 13, 1997, and filed complaints against each of them for a violation that occurred on April 1, 1997.

The appellants filed special pleas of double jeopardy, which the trial court denied. The appellants filed applications for pre-trial writs of habeas corpus. The trial court issued the writs, conducted a hearing on the merits of the appellants' double jeopardy claim, and denied relief. These appeals are from the trial court's rulings on the writs of habeas corpus.

### The State's Motion to Dismiss

We first address the State's motion to dismiss the appeals. The State argues we do not have jurisdiction because the appellants are appealing the orders denying their special pleas, which are interlocutory. The State is correct that the denial of a special plea is an interlocutory order over which the court of appeals has no jurisdiction. *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim.App.1982). However, these appeals are from the denial of habeas corpus relief, and we do have jurisdiction to hear appeals from habeas corpus rulings. See *Apolinar v.*

*State*, 820 S.W.2d 792, 793–94 (Tex.Crim.App. 1991); *Williams v. Harmon*, 788 S.W.2d 192, 193 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

■ In habeas corpus cases, there is an important distinction between those cases where the court refuses to hear the application for a writ, thus denying the writ, and cases where the court issues the writ, hears the case, and denies relief. *Williams*, 788 S.W.2d at 193. Whether a trial court issues a writ is a matter of discretion, and a defendant may not appeal its denial. *Id.* However, the denial of habeas corpus relief is appealable after the trial court issues a writ and rules on the merits. Id. Because the trial court issued writs, conducted a hearing on the merits of the appellants' double jeopardy claim, denied the appellants' requested relief, and the appellants timely filed their notices of appeal, we have jurisdiction. See *Apolinar*, 820 S.W.2d at 793–94; *Williams*, 788 S.W.2d at 193.

■ The State also argues these appeals should be dismissed because of the manner in which the habeas corpus proceedings were docketed. Specifically, they claim that because the habeas corpus proceedings are separate and distinct proceedings, they should have been docketed separately under cause numbers different from the criminal cases.[2] However, the failure to docket habeas corpus proceedings separately is a common mistake. *Ex parte Carter*, 849 S.W.2d at 411 n. 2 and n. 3. The manner in which they were docketed does not affect jurisdiction. No authority was found or cited to this Court for dismissing an appeal because a habeas corpus proceeding was docketed with the underlying action.

We deny the State's motion to dismiss the appeals.

### Analysis

■ The trial court's ruling in a habeas corpus proceeding should not be overturned unless the court clearly abuses its discretion. *Ex parte Shutter*, 868 S.W.2d 383, 387 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). A trial court abuses its discretion when it renders an arbitrary or unreasonable decision, or when it acts without any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

■ In point of error one, the appellants claim the trial court erred by denying their request for habeas corpus relief. They argue their protection against double jeopardy is violated by the State's prosecutions because the USDA is merely using the State as a tool for multiple punishments. In response, the State argues the doctrine of dual sovereignty allows them to proceed with their cases against the appellants. See *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Breedlove v. State*, 470 S.W.2d 880, 882 (Tex.Crim.App.1971); *Stewart v. State*, 652 S.W.2d 496, 502 (Tex.App.—Houston [1st Dist.] 1983, no pet.). We agree with the State.

The trial court heard testimony that the appellants were first fined by the USDA under the authority of the federal government. The State explained to the trial court that the appellants were not indicted in federal court. The State indicted the appellants for violations of state law. The State had not previously prosecuted the appellants for these offenses. The appellants did not establish they were being prosecuted by the same sovereign, *i.e.*, that the USDA and the State derived their power from the same source. See *Stewart*, 652 S.W.2d at 502. The trial court was persuaded by the State's argument of dual sovereignty, and denied the appellants relief.

The appellants do not claim they are being punished a second time by the same sovereign. They claim the Supreme Court recognized an exception to the dual sovereignty rule, called the *Bartkus* exception, which prevents successive prosecution by separate sovereigns when one sovereign is used as a tool for a sham prosecution by another sovereign, or where there is collusion between the sovereigns.[3] See *Bartkus v. Illinois*, 359 U.S.

---

2. See footnote 1.

3. They essentially argue that because the fines assessed by the USDA were punitive in nature, and there was collusion between the USDA and

121, 123–24, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). However, after a comprehensive review of cases involving successive state and federal prosecutions, the *Bartkus* Court ultimately rejected the argument for such an exception and upheld the dual sovereignty rule. *Id.* at 138–39, 79 S.Ct. at 686.

Texas law has not recognized the so-called *Bartkus* exception to the dual sovereignty rule. We have not found, nor has the appellant cited to this Court, any cases from any jurisdiction where a defendant has prevailed under the *Bartkus* exception. Since *Bartkus* was decided by the Supreme Court in 1959, Texas courts have cited *Bartkus* in nine cases, but only to uphold the dual sovereignty rule.[4] *Ex parte Williams,* 799 S.W.2d 304, 306 n. 8 (Tex.Crim.App.1990); *Reynolds v. State,* 548 S.W.2d 733, 735–36 (Tex.Crim.App. 1977); *Breedlove,* 470 S.W.2d at 882; *Supak v. State,* 388 S.W.2d 721, 723 (Tex.Crim.App. 1965); *Garrett v. State,* 387 S.W.2d 53, 56 (Tex.Crim.App.1965); *Ex parte Gary,* 895 S.W.2d 465, 468 (Tex.App.—Amarillo 1995, pet. ref'd); *Parrish v. State* 889 S.W.2d 658, 660 (Tex.App.—Houston [14th Dist.] 1994 pet. ref'd); *Guerra v. State,* 760 S.W.2d 681, 696 (Tex.App.—Corpus Christi 1988 pet. ref'd); *Lett v. State,* 727 S.W.2d 367, 369 (Tex.App.—Fort Worth 1987), *rev'd on other grounds by* 760 S.W.2d 657 (Tex.Crim.App. 1988).

■ We conclude that the decisions of our highest court of criminal jurisdiction in cases such as *Breedlove* and *Reynolds* have firmly affixed in Texas jurisprudence the rule that prosecutions for the same transaction that violate both state and federal statutes may be prosecuted by both judicial systems. Just as the USDA was entitled to charge and fine the appellants for violations of federal law, the State is entitled to prosecute the appellants for violations of state law.

The trial court's ruling was proper, and therefore it did not abuse its discretion. We overrule point of error one.

### *Preemption*

■ In point of error two, the appellants claim they were entitled to habeas corpus relief because federal law preempts prosecution by the State. This argument was not presented to the trial court either in the appellants' written motion or at the hearing. Therefore, we do not consider its merits. *See* Tex.R.App. P. 33.1; *State v. Romero,* 962 S.W.2d 143, 144 (Tex.App.—Houston [1st Dist.] 1997, no pet.).

---

the State, prosecution by the State would constitute multiple punishment, violating double jeopardy under *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). These cases are distinguishable because they apply in a situation where the *same* sovereign attempts to penalize a defendant a second time with a monetary fine in civil proceedings either before or after a criminal prosecution.

The *Kurth Ranch* case held that a Montana state tax on the possession of illegal drugs assessed after the state had imposed a criminal penalty for the same conduct violated double jeopardy. 511 U.S. at 783, 114 S.Ct. at 1948. The *Halper* Court held a defendant who had already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that a second sanction may

not fairly be characterized as remedial, but only as a deterrent or retribution. 490 U.S. at 448, 109 S.Ct. at 1902. Thus, under *Halper,* civil sanctions may be punitive for double jeopardy purposes. The *Austin* Court held that a federal forfeiture statute did not serve a solely remedial purpose and that forfeiture under the civil statute constituted punishment to which the Eight Amendment's excessive fines clause applied. 509 U.S. at 617–621, 113 S.Ct. at 2809–11.

4. In *Gary,* the Amarillo Court of Appeals rejected the defendant's argument

for applying this exception. 895 S.W.2d at 468. In *Gary,* the defendant was convicted by the federal government for carjacking, and then indicted by the State for aggravated robbery arising from the same conduct. *Id.* at 466–68. The court held the State was entitled to prosecute the defendant for the same conduct of which the federal government had already convicted him. *Id.*